

RECEIVED
IN LAKE CHARLES, LA

APR 17 2013

TONY R. MOORE, CLERK
BY _____
                    DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

MICHAEL WELCH                     :        **DOCKET NO. 2:11-CV-01765**


VS.                               :        **JUDGE MINALDI**


THE KANSAS CITY SOUTHERN          :        **MAGISTRATE JUDGE KAY**
RAILWAY COMPANY, UOP LLC
AND SOUTHERN IONICS, INC.


<u>**MEMORANDUM RULING**</u>

Before the court is a Motion for Summary Judgment as to Third Party Demand of the

Kansas City Southern Railway Company [Doc. 53], filed by the defendant/third party defendant,

UOP LLC ("UOP").[1]  The defendant/third party plaintiff, Kansas City Southern Railway

("KCSR"), simultaneously filed a Motion to Amend its Third Party Demand Against UOP and

Southern Ionics [Doc. 59], and an Opposition to the Motion for Summary Judgment [Doc. 60],

incorporating into its Opposition an argument on a new contractual indemnity claim found for the

first time in its proposed Amended Third Party Demand.  UOP then filed a reply to KCSR's

Opposition to the Motion for Summary Judgment [Doc. 66].  Magistrate Judge Kay subsequently

---

[1]The defendant/third party defendant, Southern Ionics Incorporated ("Southern Ionics"),
subsequently adopted and incorporated UOP's Motion for Summary Judgment [Doc. 62], as did
the plaintiff, Michael Welch [Doc. 57].

1

granted KCSR's Motion to Amend KCSR's Third Party Demand [Doc. 69],[2] and requested that the parties submit supplemental briefs addressing the new issue of contractual indemnity raised in KCSR's Amended Third Party Demand. KCSR thus filed a Supplemental Memorandum in Opposition to the Motion for Summary Judgment [Doc. 71], and UOP filed a Reply to KCSR's Supplemental Memorandum [Doc. 72]. As the undersigned finds that the motion is fully briefed, it is ripe for review. For the reasons discussed below, UOP's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

The plaintiff, Michael Welch, filed this suit in the Fourteenth Judicial District Court for the State of Louisiana.[3] Originally, the sole defendant in the complaint was the plaintiff's employer, KCSR.[4] The petition alleged that KCSR was liable to plaintiff, pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*, for injuries he sustained after he was exposed to toxic chemicals, gasses, vapors, and/or other substances from a gasket leak on a defective rail car.[5] Welch alleged that KCSR failed to (1) properly inspect, repair, and maintain the railcar; (2) establish and enforce proper safety procedures; (3) properly instruct, train, and

---

[2]Plaintiff Michael Welch earlier filed a Motion for Judgment on the Pleadings [Doc. 38], asserting that KCSR had failed to plead the existence of an indemnity contract between it and UOP or Southern Ionics. As the Magistrate Judge allowed KCSR to amend its Third Party Demand to include a contractual indemnity claim, Welch's Motion for Judgment on the Pleadings is now moot on this issue. This issue is addressed in a separate accompanying Memorandum Order on Welch's Motion for Judgment on the Pleadings.

[3]Pl.'s Compl., [Doc. 1-2], at pp. 5 – 8.

[4]*See id.*

[5]*Id.* at pg 5.

2

supervise; (4) provide reasonably safe and suitable tools, machinery, and equipment; and, (5) follow applicable standards, rules, and regulations.[6]   The parties have since settled that FELA claim.

Welch amended his petition for damages on two separate occasions around the time he signed the aforementioned settlement with KCSR (June 30, 2011), while the case was still in state court.  The first amended petition added the defendant UOP (who loaded the railcar) on June 21, 2011, more than a week before Welch signed his settlement agreement with KCSR.[7] The second amended petition added defendant  Southern Ionics (who shipped the railcar) on July 25, 2011, after Welch had signed his settlement agreement with KCSR.[8]  In both amended pleadings, he alleged that his injury was "due in whole or in part" to the negligence of UOP and Southern Ionics, and reasserted the exact same claims he made against KCSR[9] against both parties, albeit under a general negligence theory instead of under the FELA.

KCSR amended its answer on September 6, 2011, to include third party demands against the newly added defendants, UOP and Southern Ionics[10]  The substance of each cause of action was nearly identical, and both were phrased exclusively in terms of tort  liability: that any injuries sustained by Welch were caused "in whole or in part [due to] the negligence" of UOP and

---

[6]*Id.* at p. 7.

[7] *Id.* at pp. 148 – 151.

[8]*Id.* at pp. 178 – 182.

[9]The claims included failure to: (1) properly inspect, repair, and maintain the railcar; (2) establish and enforce proper safety procedures; (3) properly instruct, train, and supervise; (4) provide reasonably safe and suitable tools, machinery, and equipment; and (5) follow applicable standards, rules, and regulations. *Id.* at pg. 180.

[10]*Id.* at pp. 193 – 95.

Southern Ionics.[11] As in Welch's petition, KCSR alleged that UOP and Southern Ionics were negligent in failing to: (1) inspect the defective railcar, including inspecting the gaskets for damage; (2) properly repair and maintain the railcar; (3) inspect and properly secure and make closures on the railcar; (4) establish and enforce proper safety precautions; (5) instruct, train and supervise; and, (6) follow applicable standards, rules, codes, and regulations.[12] KCSR requested a judgment ordering the two parties to "fully indemnify and hold harmless KCSR for any amounts paid to plaintiff in compensation for his alleged damages."[13] On September 30, 2011, UOP removed this case to this court based on diversity jurisdiction.[14]

The claims that remain in this action, after Welch settled with KCSR, are negligence claims against UOP and Southern Ionics, and the indemnity claims in KCSR's third party complaint.

On October 15, 2012, UOP filed a Motion for Summary Judgment as to KCSR's Third Party Demand.[15] UOP argued that summary judgment was appropriate as KCSR could not assert a claim for contribution or for legal/implied indemnity for joint tortfeasors. The summary judgment memorandum did not discuss contractual indemnity; in fact, UOP specifically noted

---

[11]*Id.* at p. 193 ("Any injuries suffered by plaintiff, Michael Welch, were due in whole and cause exclusively by the negligence of UOP . . . ."), p. 194 ("Plaintiff's alleged injuries were due in whole or in part to the negligence of Southern Ionics . . . ."). KCSR asserts that the tortious conduct of UOP and/or Southern Ionics renders them "legally responsible to indemnity (sic) and hold harmless KCSR for any and all sums paid to plaintiff . . . ." *Id.* at p. 194.

[12]*Id.* at pp. 193 – 94.

[13]*Id.* at pp. 194.

[14]Not. of Removal, [Doc. 1].

[15][Docs. 53, 54].

that KCSR had not asserted such a claim

In response to this summary judgment motion, KCSR filed a Motion to Amend Third Party Demand on November 5, 2012, for the first time inserting a contractual indemnity claim into its amended third party demand petition.[16]  KCSR also incorporated this contractual indemnity claim into its opposition to the summary judgment motion, filed on November 6th. Specifically, KCSR alleged that UOP owed indemnity to KCSR under an Industry Track Agreement ("side track agreement") wherein "UOP . . . contractually agreed to indemnify KCSR" in a situation such as the one presented in Welch's complaint.[17]  The proposed amended third party demand only pertained to UOP's alleged liability; it did not affect the potential liability of Southern Ionics.[18]  KCSR also addressed and refuted UOP's allegations in its summary judgment motion that it did not have an actionable contribution claim or legal/implied indemnity claim against UOP or Southern Ionics.

On November 16, 2012, UOP filed a reply to KCSR's opposition to summary judgment, reasserting its arguments against implied/legal indemnity, and arguing that the new contractual

---

[16]Mot. to Amend/Correct Answer to Complaint, [Doc. 59].  In the amended petition, KCSR noted: "Under the terms of the Industry Track Agreements, UOP agreed to defend, indemnify, and hold KCSR harmless from various claims and causes of action, including but not limited to claims for personal injury against KCSR by KCSR employees arising from or related to UOP's use of the track and facilities governed by the Industry Track Agreements." Amended Third Party Compl., [Doc. 59-1], at ¶ VI.

[17]The side track agreement provides that UOP will ". . . indemnify and hold harmless [KCSR] for loss, damage or injury from any act or omission of [UOP], its employees, or agents, to the person or property of the parties here-to and their employees and to the person or property of any other person or corporation, while on or about said sidetrack." Side Track Agreement, Ex. A to Pl.'s Opp. to Mot. for Summ. J., [Doc. 63-2].

[18]*See* [Doc. 59-1].

indemnity claim failed because the side track agreement only covered accidents that happened "on or about" a sidetrack inside UOP's facility, and not accidents that happened on railcars once they left the facility (as was the case in Welch's accident).[19]

After extensive briefing by the parties, Judge Kay granted KCSR's Motion to Amend Third Party Demand to include the new side track agreement contractual claim, and requested that the parties submit additional briefing for the purposes of the pending summary judgment motion on the contractual indemnity issue.[20]

On February 1, 2013, KCSR filed its Supplemental Memorandum in Opposition to Motion for Summary Judgment as to Third Party Demand of KCSR.[21]  In its memorandum, KCSR argued that UOP owed both "implied and contractual indemnity obligations to KCSR in connection with the injuries alleged by Mr. Welch."  It noted that it had already briefed the issue of implied/legal indemnity in its original opposition to the summary judgment motion.  Turning to its contractual indemnity claim, it alleged that under the side track agreement, it was at least ambiguous whether UOP had to indemnify KCSR for injuries Welch sustained, when UOP's alleged negligence in unloading and failing to inspect the railcar at its Caddo Parish Facility on June 23, 2009 could be the proximate cause of Welch's injuries, which occurred after the railcar left UOP's facility, on June 26, 2009.

On February 8, 2013, UOP filed its Reply (Contract Claim) in Support of Motion for

---

[19]UOP's Reply to Opp. to Mot. for Summ. J, [Doc. 66].

[20][Doc. 69].

[21][Doc. 71].

Summary Judgment as to KCSR's Third Party Demand. In its memorandum, it noted that it had already briefed the issue of contractual indemnity in its original summary judgment reply. Reiterating, it argued that interpreting the side track agreement using "the rules of grammar," it was clear that the contractual provision in the side track agreement did not allow for indemnity in this situation, since "on or about said sidetrack" applied to the entire indemnity provision, and Welch's injuries did not occur "on or about said sidetrack."

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the

7

non-moving party…" *Id.*

**LAW & ANALYSIS**

I.      **Contribution and Legal/Implied Indemnity**

      **A. Contribution**

The parties' first contention centers around the effect of Welch's settlement of his FELA claim with KCSR on or about June 30, 2011. As noted *supra,* around the time that Welch entered into the settlement with KCSR, Welch amended his petition to add claims against UOP and Southern Ionics (on June 21, 2011 and July 28, 2011, respectively). After settlement, on September 6, 2011, KCSR filed a third party demand against UOP and Southern Ionics, requesting the parties "fully indemnify and hold harmless KCS[R] for any amounts paid to [Welch] in compensation for his alleged injuries."

UOP asserts that, in light of KCSR's settlement agreement and its subsequent demand that UOP and Southern Ionics indemnify KCSR for monies paid out in the settlement, it was necessary to obtain the settlement documents "to determine which party retained the right of action to proceed against UOP." After Judge Kay granted UOP's motion to compel production of the settlement on October 1, 2012, UOP had "the missing information which it needed to file [its] motion for summary judgment."

UOP's argument on contribution is fairly straightforward: it argues that, based on the settlement agreement, it is clear that (1) Welch settled only his claims against KCSR and (2) Welch did not release claims against entities other than KCSR. As such, UOP argues that as a matter of law, KCSR does not have an actionable claim for contribution.

KCSR responds that UOP's arguments on contribution and the settlement agreement

8

between itself and Welch are irrelevant to KCSR's indemnity claims against UOP and Southern Ionics. It notes that it does not assert that, because of the settlement agreement with Mr. Welch, it has acquired the plaintiff's cause of action against UOP and Southern Ionics. Instead, KCSR asserts its claims based on the theories of contractual and implied indemnity.

UOP does not address this issue in its reply memorandum. The undersigned agrees with KCSR that UOP has improperly framed KCSR's position in this argument: In its third party demand petition, KCSR is seeking indemnity, not contribution based on the theory that KCSR has acquired Welch's cause of action in his original petition. Welch did not release his claims of negligence against either UOP or Southern Ionics in his settlement with KCSR; instead, they still appear as defendants in this action. Accordingly, the arguments and caselaw cited in support of UOP's argument are irrelevant. The undersigned will thus turn to KCSR's legal/implied indemnity claim.

### B. Legal/Implied Indemnity

The second issue raised in the original summary judgment motion is whether KCSR can assert a claim for legal/implied indemnity. UOP argues that, as a matter of law, KCSR cannot assert a claim for legal/implied indemnity, since legal/implied indemnity can only arise when the liability imposed upon the indemnitee is technical, vicarious, or constructive. As such, a party who is *actually* negligent or at fault (here, allegedly KCSR) cannot recover under a theory of legal/implied indemnity. It further notes that, in this case, while KCSR has denied any fault whatsoever (placing the blame squarely on UOP and Southern Ionics), in order to seek indemnity for a settlement, KCSR must show actual liability to recover. Thus, UOP characterizes this situation as a "Catch 22" for KCSR: (1) KCSR allegedly cannot assert a claim for legal

indemnity if it had "actual fault"; (2) Welch's only claims against KCSR in his original petition were based upon FELA, which requires "actual fault" for liability; but, (3) without "actual fault," KCSR could not have been liable to Welch and indemnity would be moot.

KCSR counters that any injuries sustained by Welch were caused solely by the negligence of UOP and Southern Ionics, and that neither party has submitted evidence to contradict this claim. Continuing, it argues that while it made payment to Welch in order to settle his FELA claims against it, its obligation to pay "arose solely due to the fault of UOP and Southern Ionics, [who] have become legally bound to indemnify KCSR for its loss." Citing the Eastern District of Louisiana case, *Crump v. Canadian Nat'l/Illinois Central RR Co.*, 2003 WL 2199934 (E.D. La. Aug. 19, 2003), KCSR argues that "an employing railroad which settles a FELA claim with its employee, even though it is not at fault, or is only passively at fault, has the right to seek indemnity from third party tortfeasors." *Id.* at *2. KCSR also cites to the unpublished Fifth Circuit case *Martco Ltd. v. Partnership v. Mid-South Engineering Co..* 430 Fed. App'x. 332 (5th Cir. June 23, 2011), for the general proposition that when a party asserting an indemnity claim denies any wrongdoing in the case and has alleged that any liability it has is only technical, there is a viable basis for indemnity. *Id.* at 337 – 38.

UOP counters in its reply that KCSR's characterization of the holding in *Crump* is misleading: that, in fact, KCSR was involved in the *Crump* case and the section of the *Crump* case from which KCSR cited was not the "analysis" section of the opinion, but rather the section of the opinion which *summarized KCSR's own arguments*. It further notes that the holding in *Crump* said nothing about indemnification, with the judge instead deciding that the court lacked jurisdiction because KCSR's claims had already been decided in binding arbitration. The

10

undersigned notes that this is true: reviewing the *Crump* decision, KCSR's quoted passage (a railroad who is passively at fault is allowed to seek indemnity) is in the arguments summary section of the opinion, and is not elaborated on at all. *Id.* at *2. Further, in *Crump*, UOP is correct in noting that Judge Porteous did not ultimately rule on the issue of indemnification, and thus this case provides little in the way of guidance on the issue at hand. *See id.*

UOP also distinguished the second case cited by KCSR, *Martco*, noting that in *Martco*, the defendant seeking indemnity explained how it could be liable to a plaintiff *without actual fault*, whereas in this case, the plaintiff only asserted a FELA claim, in which liability allegedly only arises out of *actual fault*. Reviewing the case, *Martco* involved claims for redhibition, breach of contract, detrimental reliance, and negligence with the manufacture and delivery of equipment. *Id.* at 333. The *Martco* case provides no guidance to the court on whether and in what instances implied indemnity arises in FELA lawsuits.

The backbone of UOP's argument seems to center around the holding from an unpublished Northern District of New York case, *Mancini v. CSX Transportation*, No. 08-CV-933, 2010 WL 2985964 (N.D. N.Y., July 27, 2010). This case is not, however, the panacea that UOP makes it out to be. In *Mancini*, an on-duty railroad employee was injured in an automobile accident. *Id.* at *1. He sued: (1) his employer, CSX Transportation, under the Federal Employers' Liability Act, alleging that CSX failed to provide a safe place to work; (2) Richard Ketterer, the driver and owner of the vehicle the plaintiff was riding in, alleging that Ketterer was negligent under state law in operating his vehicle; and, (3) Carol Ashwood, the driver of the vehicle which struck Ketterer's vehicle, alleging that she was negligent in operating her vehicle. *Id.* CSX then filed a cross claim against Ketterer and Ashwood, seeking contribution and/or

indemnity in the event a judgment was rendered against it. *Id.* In the inverse of the situation presented in this case, the third parties (Ashwood and Ketterer) then settled with the railroad employee, leaving only the railroad as a defendant. *Id.*

The *Mancini* court discussed implied indemnification, explaining that implied indemnity is an equitable doctrine which arises in favor of one who is compelled to pay for another's wrong. *Id.* at *3. Implied indemnity, therefore, shifts the loss from the non-negligent party who has been compelled to pay damages, to the negligent party, in order to avoid unjust enrichment. *Id.* at *4. The court noted that the "predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee." *Id.*

Applying the law to the facts, the court held that first, there was no legal duty for Ashwood to indemnify CSX, and thus the indemnification claim could be dismissed on that basis alone. *Id.* at *5. Continuing, the court held that an implied indemnification claim would not arise unless a jury later found that CSX was at fault under the FELA but, once such a finding was made, "any indemnity claim would be extinguished by virtue of the jury's determination of CSX's actual fault in causing damages." *Id.* In contrast, if CSX were found to be not at fault at all and all the fault were apportioned to Ashwood, then the indemnification clause would still be negated as a matter of law once the jury concluded that CSX was also "at fault" to some degree for causing the plaintiff's injuries by failing to provide the plaintiff a safe vehicle in which to ride. *Id.* Essentially, CSX's claim for indemnification was premature since a jury had not decided how to apportion liability, but either way, the court held that CSX would not be entitled to indemnity. *See id.*

In this case, the facts are different. As noted *supra,* KCSR has already settled its claims with Welch: thus, apparently the money it seeks to recoup is from this confidential settlement. In

12

*Mancini*, CSX instead prospectively sought indemnification from third parties in case damages were assessed against it at trial. *Id.* at *1. Further, additional facts make the *Mancini* case distinguishable from this case. The claims against the third party torfeasors in the *Mancini* case were markedly different from the claims against CSX: general negligence claims for failing to safely operate a vehicle against the third parties, versus a FELA claim against CSX for not providing a safe place to work. *Id.* In this case, the claims against the third party tortfeasors, UOP and Southern Ionics, are essentially identical to those asserted against KCSR (failure to inspect railcar gasket, etc.), with the one real difference being that the claims against KCSR are brought through the framework of FELA, and the claims against UOP and Southern Ionics are brought under the general theory of negligence. Finally, in light of other case law discussed below, the undersigned expresses doubts as to the accuracy of *Mancini*'s holding that, even if a third party is found entirely at fault, indemnity would be negated as a matter of law because a railroad would still be "at fault" to some degree for failing to provide an employee a safe place to work. *Id.* at *5. Thus, *Mancini* also provides little in the way of guidance for this case.

As one treatise on a railroad's right to indemnity and contribution in FELA cases provides:

> The general rule of contribution or indemnity among joint tortfeasors has often been stated as being that a joint tortfeasor cannot recover either indemnity or contribution from his co-joint tortfeasor, even though the one seeking it may be held liable for more than his share, or even for the full amount. Among the many exceptions to this rule is . . . the rule that a railroad charged with liability under the Federal Employers' Liability Act may recover contribution or indemnity, under certain circumstances, from a third party whose tortious conduct would render him liable to the injured employee in a private action by the employee against the third party.
>
> One obvious reason for permitting this particular exception is that under the FELA a railroad may be liable merely for a failure to provide its employees with a safe place

to work. This so-called "failure" may entail little or almost no actual negligence on the part of the railroad, with the entire proximate cause resulting from the acts of a third party. In such a situation, where the negligence of the third party may be called the "active" or "primary" negligence and that of the railroad "passive" or "secondary" negligence, it has generally been held that the railroad against which liability is sought by its injured employee may recover full indemnity from the third party. On the other hand, a railroad whose negligence is more than merely passive, and whose acts contribute to the injury, is not entitled to indemnity although it may nevertheless be entitled to contribution from a third party whose negligent acts also contributed to the injury.

V.G. Lewter, Annotation, *Right of Railroad, Charged with Liability for Injury to or Death or Employee under Federal Employers' Liability Act, to Claim Indemnity or Contribution from Other Tortfeasor*, 19 A.L.R. 3d 928 (1968).

A 1971 case from the Western District of Louisiana, *Brenham v. Southern Pacific Co. v. Sutton's Steel & Supply*, 328 F.Supp. 119 (W.D. La., 1971), provides some additional guidance on this issue. In *Brenham*, the plaintiff, a brakeman for Southern Pacific Railroad Company injured his back on piece of scrap metal lying on the railroad's right-of-way. *Id.* at 121. The plaintiff filed suit against Southern Pacific under FELA. *Id.* Southern Pacific simultaneously answered the petition and impleaded Sutton's Steel & Supply, Inc. (the alleged producer of the scrap metal), as a third party defendant, seeking indemnity or, in the alternative, contribution. *Id.* One of Southern Pacific's grounds for its indemnity was based on a tort or quasi-contractual theory, on the theory that it was only constructively at fault, and Sutton was actually at fault, for the plaintiff's injuries. *Id.* Southern Pacific then settled with the plaintiff, reserving its rights against third parties. *Id.* at 122.

The case then went to trial based on the third party demands. *Id.* The jury returned a verdict and found that Southern Pacific was "guilty of negligence which played [a] part, even the

slightest, in causing the injury" of the plaintiff because: (1) Southern Pacific had failed to provide him with a safe place to work when it knew or should have known that scrap metal had accumulated on the side of the tracks, and (2) Southern Pacific had not provided sufficient additional lighting such that the plaintiff could see the scrap metal. *Id.* The jury also decided that Sutton Steel's negligence had played a part in the plaintiff's injuries. *Id.*

Because the jury had only assessed whether Southern Pacific's negligence was sufficient enough to invoke liability under FELA (i.e., whether its negligence played even a *slight part* in the accident), the court separately made the factual determination that the railroad's negligence was also sufficient to constitute proximate cause. *Id.* Thus, the court found that Southern Pacific was guilty of *actual fault* for the plaintiff's injuries under Louisiana law. *Id.* Based on this finding, the court held that Southern Pacific could not assert a claim for tort/quasi contractual indemnity, because under Louisiana law, such indemnity would only arise when the party seeking indemnity was only "technically, constructively, or vicariously at fault." *Id.* (construing *Appalaichan Corp. v. Brooklyn Cooprage Co.*, 91 So. 539 (La. 1922); *Minyard v. Curtis Prods., Inc.*, 205 So.2d 422 (La. 1967)).

In this case, KCSR asserts that its negligence was merely "passive," and that the "primary" or "active" negligence arises instead from UOP and Southern Ionics. UOP, perhaps in part because of the way it framed its original summary judgment argument, has produced no summary judgment evidence to contradict this claim. KCSR, in contrast, has produced evidence[22] that the railcar which injured Welch was delivered to UOP's Caddo Parish facility on

---

[22]Aff. of Terrell L. Anderson, Ex. to KCSR's Opp. to Mot. for Summ. J., [Doc. 63-1], at ¶¶ 6-7; Equipment Event Inquiry, Ex. B to KCSR's Opp. to Mot. for Summ. J., [Doc. 63-3]; Waybill,

June 16, 2009, and then released on June 23, 2009, ultimately arriving in Mossville, Louisiana on June 26, 2009 (the date of Welch's injury), and that the gasket damage was confirmed on June 27, 2009.[23]

Thus, construing the evidence in the light most favorable to KCSR, there is at least *some* chance that the negligent acts of UOP, during this June 16 – June 23 time window, could have been the sole cause of the gasket leak which injured Welch. Additionally, Southern Ionics has produced no evidence to show that it was non-negligent in the shipping of the railcar before it got to the UOP facility. Absent further information indicating whether KCSR had any "actual" fault which contributed to Welch's injuries, or else was only "passively" at fault, summary judgment dismissing KCSR's indemnity claims against UOP and Southern Ionics is premature.

## II.    Contractual Indemnity under the Side Track Agreement

KCSR alleges in its opposition memorandum that "UOP has contractually agreed to indemnify KCSR" in this case. It then cites to the 1949 side track agreement entered into by the parties, which provides in relevant part:

> To indemnify and hold harmless [KCSR] for loss, damage or injury from any act or omission of [UOP], its employees, or agents, to the person or property of the parties here-to and their employees and to the person or property of any other person or corporation, while on or about said sidetrack.[24]

---

Ex. C to KCSR's Opp. to Mot. for Summ. J., [Doc. 63-4].

[23]KCSR also attached as an exhibit to its supplemental memorandum the deposition transcript of Max Stevens, who had been tasked with inspecting the railcar on the day after Welch was injured (June 27, 2009). Stevens noted that upon inspection, it was clear that a gasket on the railcar had broken, leading to a toxic leak of ammonia fumes. *See generally* Stevens Deposition, Ex. to KCSR's Supp. Mem., [Doc. 71-1].

[24]Side Track Agreement, Ex. A to Pl.'s Opp. to Mot. for Summ. J., [Doc. 63-2].

KCSR asserts that the issue of contractual indemnity turns on whether the last six words of the side track agreement ("while on or about said sidetrack") apply to Welch's claims or not. KCSR argues that

> A plain reading of the provision shows that UOP agrees to indemnify and hold harmless KCSR in two distinct situations. First, UOP owes indemnity for "damage or injury" sustained by either the railroad or "their employees" resulting from the negligence ("act or omission") of UOP. Secondly, UOP owes KCSR indemnity where other persons who are not party to the contract ("the person or property of any other person or corporation") are injured "on or about said sidetrack."

Essentially, KCSR alleges that when damage or injury is sustained by KCSR or its employees, the limitation of the injury having to be on the side track does not apply, and thus indemnity is broader for this category of individuals. In contrast, if the damage or injury is sustained by a person not party to the contract, then the indemnity is much more limited, and UOP only has to indemnify KCSR if the injury happens "on or about" the side track.

Turning to the specific facts of the case, KCSR asserts that the leaky railcar which caused Welch's injuries was loaded and delivered to UOP's Caddo Parish facility on June 16, 2009, and that the UOP facility is governed by the track agreements between KCSR and UOP. KCSR alleges that the railcar was unloaded and released by UOP from its Caddo Parish facility on June 23, 2009, arriving at KCSR's railyard in Mossville, Louisiana on June 26, 2009 (the location and date where Welch sustained his injuries). Thus, KCSR alleges that "UOP's negligence in connection with its unloading and inspection of the rail car while in [UOP's] care and on the sidetrack led directly to the rail car leak and the alleged personal injuries."

In UOP's reply, it asserts that the side track agreement is inapplicable to Welch's injury,

17

because it occurred at KCSR's railyard in Mossville.  UOP explains that the side track agreement "sets forth KCSR's responsibility for building a sidetrack in UOP's facility and UOP's obligations in regard to the risks which are inherent in having a railroad track at the facility. . . . The agreement does not, as KCSR argues, apportion responsibility for damages caused by railcars once they leave that facility."  UOP asserts that case law supports its argument that the indemnity clause contained in the side track agreement is a standard clause, and that it only applies when the injury actually happens "on or about" the sidetrack, as opposed to the alternate interpretation, in which UOP would be liable for any negligence committed on the sidetrack which did not lead to an injury until the railcar left the sidetrack.

In KCSR's supplemental memorandum on contractual indemnity, KCSR reasserts its argument that the indemnity provision in the sidetrack agreement cannot be limited to injuries which occur "on or about" the sidetrack   Construing the side track agreement provision, KCSR asserts that it was the intentions of the parties, in forming the contract, to "distinguish indemnity obligations owed in the event that the railroad (or its employee) is damaged from those owed in the event 'any other person' is damaged."  KCSR argues in the alternative that the indemnification provision is at least ambiguous on whether UOP is required to indemnify KCSR in instances where the injury occurs outside of the UOP facility/sidetrack.

In UOP's reply supplemental brief, it argues that KCSR has not cited any cases that contradict those UOP had already cited, interpreting the "on or about" sidetrack language to only allow for indemnification when the injury happens on the sidetrack.

There is very little case law (and none in the Fifth Circuit) that addresses an issue exactly like the one presented in this case. The few cases cited by UOP in its briefs come from a 1978 ruling from a Florida state court (*Sol Walker & Co. v. Seaboard Coast Line*, 362 So. 2d 45 (Fla. Dist. Ct. App. 1978)), and a 1992 ruling from the Northern District of Illinois (*Gaines v. Illinois Central RR Co. v. Tabor Grain Co.*, 796 F. Supp. 313 (N.D. Ill. 1992)).

In the Florida case, *Sol Walker,* the court addressed a situation very similar to the one at hand.  In *Sol Walker*, a scrap iron dealer (Walker) maintained a sidetrack and sidetrack facility that connected to the main line of a railroad (Seaboard).  *Sol Walker,* 362 So.2d at 47.  The parties entered into a sidetrack agreement which contained a provision requiring Walker to indemnify Seaboard for liability incurred through Walker's negligence, and providing that claims arising from the joint negligence of the parties would be borne equally.[25]  *Id.* at 47 – 48.  Each day, Seaboard would deliver empty railroad cars to the Walker sidetrack facility, and Walker would load the cars with scrap metal.  *Id.*  On one such occasion, Seaboard picked up four cars loaded with scrap metal, and transported them to a few different locations.  *Id.*  After the cars arrived at a railroad yard, a Seaboard switchman was injured when scrap metal from one of the

---

[25]The indemnification provision provided:

> Shipper will indemnify and hold [Seaboard] harmless for loss, damage, or injury from any act or omission of [Walker], his employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about the track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

> *Id.* at 48 – 49.

cars landed on him. *Id.* The switchman brought suit against Seaboard and Walker, and a jury returned a verdict against Seaboard. *Id.* Seaboard then sought indemnification from Walker, alleging that Walker was at least partially at fault because it had negligently loaded the scrap metal onto the car. *Id.*

Walker argued that the indemnity provision contained in its contract with Seaboard precluded Seaboard from seeking indemnification. *Id.* Central to the inquiry for the Florida court, as in this case, was the question of what the words "while on or about the track" modified in the side track indemnification provision; either: (1) any negligent action that happened while on or about the tracks could trigger indemnification, even if the actual injury occurred off the sidetrack or (2) the injury itself *had* to happen on the sidetrack, and thus the indemnification provision would be inapplicable, because the switchman's injuries occurred several miles away from the sidetrack. *Id.*

The court decided to construe the indemnification provision narrowly (and thus in favor of Walker), and concluded that the provision was inapplicable to situations in which the accident did not actually occur "on or about the tracks." *Id.* Persuasive to the court were "two well established maxims of construction:" (1) a provision in a contract will be construed most strongly against the party who drafted it (here, Seaboard); (2) "where an indemnification is not given by one in the insurance business but is given incident to a contract whose main purpose is not indemnification, the indemnity provision must be construed strictly in favor of the indemnitor" (also Seaboard). *Id.* (citing *Lindquist v. Burklew*, 123 So.2d 261 (Fla. Dist. Ct. App. 1960); *Thomas v. Atlantic Coast Line R. Co.*, 201 F.2d 167 (5th Cir. 1953)).

In the Illinois case cited by UOP, *Gaines*, the court addressed a slightly different fact pattern. In *Gaines*, a brakeman sustained injuries when he was thrown from a train to a roadbed adjacent to the track. *Gaines*, 796 F.Supp. 314. The accident allegedly accrued because a grade crossing had been covered in asphalt. *Id.* Despite applying the brakes, three of the train's cars still continued through the covered crossing, with the asphalt causing the cars to derail from the track. *Id.* The brakeman/plaintiff sued the owner of the railroad track (Illinois Central) and also sued the owner of an adjacent sidetrack (Pacific Grain). *Id.* Illinois Central and Pacific Grain had a similar sidetrack indemnification provision in their contract to the one found in this case and in *Sol Walker*, and Illinois Central alleged that the indemnification clause was controlling, since even though the accident did not occur on Pacific Grain's sidetrack, it did take place "on or about" the sidetracks covered by their contract. *Id.*

In reaching its conclusion on whether the indemnity provision required Pacific Grain to indemnify Illinois Central, the *Gaines* court analyzed and rejected several similar cases as inapposite to the facts in its case. *See id.* at 315 – 18. Importantly for the purposes of this motion, however, the court did conclude that the phrase "on or about" a designated sidetrack was a "narrow" clause which "impose[d] a physical limitation on the location of the injury." *Id.* at 318. The court did hold, however, that "[t]he loss or injury need not have been incurred *on* the sidetrack . . . but it must bear some relationship to one of those tracks in addition to its relationship to the operation or use of the facility in general." *Id.* The *Gaines* court concluded that because there was no relationship between the plaintiff's injury and the sidetracks referenced in the agreement, the indemnity provision could not be invoked. *Id.* at 318 – 19.

21

Thus, while *Sol Walker* seems to indicate that Welch's injury clearly would not be covered by the indemnification provision because it did not occur on the sidetrack, *Gaines* still gives KCSR some hope, as it leaves open the option that if there is *some relationship* between the plaintiff's injury and the sidetracks (in this instance, the alleged negligent unloading and inspection of the railcar happening at UOP's sidetrack facility), then KCSR may have a colorable indemnity claim. The undersigned is also swayed, however, by the general rules of contract interpretation in Louisiana:

> In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
>
> Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.

La. Civ. Code. Art. 2057.

Here, the obligee would be KCSR, and the obligor would be UOP. Construing the arguably ambiguous indemnification provision in favor of UOP, UOP would only be liable for injuries that occur "on or about" the sidetrack, and not those that accrue because an alleged negligent act occurred on the sidetrack, which set off a chain reaction, ultimately leading to Welch's injuries several miles away. If the parties had instead contracted for a broader indemnification provision, such as requiring indemnification for injuries that occurred "in connection with" the sidetrack, then perhaps the inquiry would be different. *See Gaines*, 796 F. Supp. 318 (noting that courts broadly construed side track indemnity clauses using the term "in connection with" a sidetrack as opposed to the much narrower term "on or about" a sidetrack).

Further, in the Fifth Circuit,

22

It is the general rule that where the indemnity is not contracted for from an insurance company whose business it is to furnish indemnity for a premium under a contract, but is from one not in the indemnity business and as an incident of a contract whose main purpose is something else, the indemnity provision is construed strictly in favor of the indemnitor.

*Thomas*, 201 F.2d at 169 (citations omitted).

Here, the indemnity provision is "incident of a contract whose main purpose" is not indemnification, but to govern the relationship between UOP and KCSR. Once again, construing the language in the side track agreement in favor of the indemnitor, UOP, it is clear that the "on or about" sidetrack language must be interpreted narrowly such that it does not apply to Welch's claim here. Accordingly, summary judgment in favor of UOP is appropriate for this contractual indemnity claim.

Lake Charles, Louisiana, this ___ day of _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

23